MARY YOUNG *vs.* OLD COLONY RAILROAD COMPANY.

Suffolk.    November 11, 1891. — March 31, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Due Care — Crossing.*

A woman having opportunity to make inquiries about the train she was to take failed to do so, and then attempted in broad daylight to cross the tracks in front of an approaching train, which she saw, and which was only a short distance away, and was struck by the engine and injured, the company having made no provision for and held out no invitation to her to cross where she did. *Held,* that she could not recover in an action for damages against the railroad.

The fact that others crossed a railroad track at the place where the plaintiff attempted to cross and was injured constitutes no excuse, in the absence of any planking or invitation by the railroad, or proof that the place was known to or acquiesced in by the railroad as a crossing.

TORT, for personal injuries occasioned to the plaintiff by being struck by the defendant's locomotive engine at Hyde Park.

At the trial in the Superior Court, before *Lathrop,* J., there was evidence tending to show that at Hyde Park there are three tracks : the easterly, for the trains from Boston, the middle, for the trains to Boston, and the westerly, known as the third track ; that across the tracks and opposite the station there was a platform for accommodating people going in and out of trains ; that about one hundred and thirty-two feet north of the ladies' room, in which the plaintiff was sitting, was a bridge connected with the platforms on each side of the track by steps, so that a person could cross from the station to the platform opposite without crossing the tracks ; that the steps leading up to this bridge on the station side could not be seen from the ladies' room door ; that some people using the station went across the bridge, and some across the tracks between the station and the platform ; that on the piers of the bridge were notices to the effect that persons crossing were required to use the bridge, and

that if they crossed upon the tracks they did so at their peril; that these notices could not, with the exception of the word "Notice," be read from the ladies' room door, and one of the notices could not be seen from that point; that there was a board planking between the middle track and the westerly track, extending a distance of several hundred feet, and there were other pieces of planking extending across certain of the tracks at various places in front of the station and the covered platform, some of these plankings extending about two thirds of the way across, but there was no plank walk which extended clear across between all of the tracks; that on the day of the accident, after the plaintiff had remained fifteen minutes in the ladies' room without learning, as she might have done by making inquiries, that the train she was to take was the one approaching on the easterly track, an employee of the defendant, named Tracey, came to the ladies' room and called out "Train for Providence," and then started across the tracks, and the plaintiff followed him, and was struck by an engine of a train on the westerly or third track.

The plaintiff testified on direct examination as follows:

"*Q.* Mr. Tracey called 'Train for Providence'?  *A.* Yes.

"*Q.* Where was he when he called 'Train for Providence'? *A.* At the door of the ladies' room.

"*Q.* Did he open it?  *A.* It was already open; he looked in and called.

"*Q.* Then what did he do, and what did you do?  *A.* He went across toward the train, toward the track, and I followed."

The plaintiff testified on re-direct examination as follows:

"*Q.* Now you say that Mr. Tracey put his head in the door, and called out 'Train for Providence'; after that what did he do?  I think there is some little misunderstanding about this. *A.* He went across the track.

"*Q.* Did he go up the platform, and then go across?  *A.* He might have gone a few steps; he was quite near me; he could not have gone far, for he was quite near me.

"*Q.* Did you suppose he was leading you for the train? *A.* Well, it is hard to tell, for it was such a short time.  I thought I was following him right; that it was right to follow him.

"*Q.* You thought you were following him right?  *A.* Yes, sir."

The judge directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1891, and afterwards was submitted on the briefs to all the judges.

*W. A. Gaston,* for the plaintiff.

*J. H. Benton, Jr.,* for the defendant.

MORTON, J. We think, upon the facts disclosed in the exceptions, that the plaintiff was not in the exercise of due care. She attempted in broad daylight to cross the track in front of an approaching train, which she saw, and which was only a short distance away, — so near, in fact, that, when she stumbled and fell upon the track, the engine struck her before she could recover herself. It was also due to her own failure to make proper inquiry that she attempted to cross the tracks at all. She was in the station for fifteen minutes, and might easily have learned by suitable inquiries that the train which she was to take was the one approaching on the easterly track, and not on the westerly one. Failure to use ordinary means of information, when the situation is such as fairly to require one to do so, is an element of negligence. The company made no provision and held out no invitation for her to cross where she did. If, at the moment, she was justified by Tracey's words and movements in thinking that her train was on the westerly track, there was nothing to excuse her for attempting to cross ahead of the train when it was rapidly approaching and was close at hand. By common consent, such conduct would be considered careless, and it would be unjust to hold the company liable for an accident so caused. The case differs from *Warren* v. *Fitchburg Railroad,* 8 Allen, 227, and similar cases. In that case there was an express invitation by the station-master to the plaintiff to cross over, and the plaintiff did not see and had no reason to expect that the train which struck him was approaching. The fact that others crossed at the place where the plaintiff attempted to cross, in the absence of any planking or invitation by the railroad, or proof that the place was known to or acquiesced in by the railroad as a crossing place, was no excuse for her. *Bancroft* v. *Boston & Worcester Railroad,* 97 Mass. 275. *Wheelwright* v. *Boston & Albany Railroad,* 135 Mass. 225. *England* v. *Boston & Maine Railroad,* 153 Mass. 490. We do not think it can be fairly con-

tended, on the plaintiff's testimony, that the train which she saw was not the accommodation train.   If it was not, her conduct was still less excusable, as she could have no reason to suppose that she was to take any other train than the one approaching on the westerly track.                       *Exceptions overruled.*