OSCAR RAYMOND, administrator, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.

Worcester.   September 29, 30, 1902. — November 26, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Contributory.

A traveller on a highway who crosses a railroad track at a grade crossing with-
out looking to see whether a train is approaching is not in the exercise of
due care.

TORT for the death and conscious suffering of the plaintiff's
intestate alleged to have been caused by the negligence of the
defendant.   Writ dated February 3, 1900.

At the trial in the Superior Court before *Gaskill,* J., the jury
returned a verdict for the plaintiff on the fifth count of the
declaration, for conscious suffering of the intestate, in the sum
of $500, and on the sixth count, for the death, in the sum of
$1,200, and found for the defendant on the other counts.   The
defendant alleged exceptions.

*A. P. Rugg,* for the defendant.

*H. Parker,* ( *C. C. Milton & G. A. Gaskill* with him,) for the
plaintiff.

LATHROP, J.   This is an action of tort by the administrator
of the estate of Louise Raymond.   The declaration as amended
contains six counts.   The first four are under the Pub. Sts.
c. 112, §§ 212, 213, for failure to give the statutory signals, and
for maintaining an incompetent flagman at the place where the
accident happened.   The jury returned a verdict for the de-
fendant on these counts; and as the case is before us only on
the defendant's exceptions, we are not called upon to consider
the questions which have been argued on these counts.

The fifth count is brought to recover for the conscious suffer-
ing of the intestate, and the sixth count to recover for the death
of the intestate.   The first count is at common law, and the
second is under the Pub. Sts. c. 112, § 212.   In each count it
is alleged that the tracks of the defendant cross at grade a cer-
tain highway or public street in Worcester, and that on January

3, 1900, the intestate, while upon the street and crossing the tracks, and exercising due care, was struck and injured by a locomotive engine and train run by the defendant. The negligence of the defendant is alleged to be the maintaining, or the suffering to be maintained, of certain barriers and obstructions within the location of the defendant, and from the north to the south sides of the crossing.

We do not find anything in the evidence to sustain the last allegation of the declaration that the barrier extended from the north to the south side of the crossing. On the contrary, as the plan of the location was explained to us by the counsel at the argument, and as the photographs in the case show, the barrier covered only a part of the street.

While the briefs of the counsel on either side cover many points, there is only one which we need to consider, and this is the question whether there was any evidence that the intestate was in the exercise of due care.

As to this question, the eighth request for instructions is as follows : " If the plaintiff's intestate did not look in the direction from which the train was coming, which struck her when she reached a point where she could have seen it, then she cannot recover." We are of opinion that this instruction should have been given. The tracks of the defendant, at the place of the injury, run north and south, and are four in number. The alleged barrier consisted of a fence placed in front of an excavation to keep persons from falling in. The excavation was on the east side of the tracks and the nearest point of the barrier to the most easterly rail was three and fifty-six one hundredths feet, and the distance widened out to six feet and four inches. The evidence at the trial was contradictory on the point whether the intestate crossed the tracks diagonally and came to the barrier at its northerly end, where there was the least distance between the barrier and the easterly track, or whether she came to the barrier at its southerly end, and walked along it until she came to the northerly end, where she was struck by a train going north. We must assume, in favor of the plaintiff, that she crossed diagonally, and so, although she was not on the tracks at the time of the injury, she was in a place so confined that she could not get round the barrier in time to escape injury.

As the intestate crossed over, there were some freight cars near the crossing, and there was a switching engine north of the crossing, standing still. It does not appear clearly on which track they were, and so far as the switching engine is concerned it is of no consequence. Neither could have been on the track nearest the barrier. If we assume that the freight cars were on the track nearest to the track on which the train came which hit her, there was a space of over twelve feet between the two lines of track, and it is obvious that if the intestate had looked towards the south she could not have failed to see the train. It appears from her statement made in the hospital, that after passing the freight cars she was looking at the switching engine on her left, and, as that was standing still, she " thought she had all the chance in the world to go by," because that engine was all she had seen. The evidence shows that the accident happened in the morning, and that there was nothing to prevent her seeing if she had looked. In fact the track was visible for nearly a mile towards the south. Her failure to look was negligence which prevents the plaintiff from recovering. *Tyler* v. *Old Colony Railroad*, 157 Mass. 336, and cases cited. *Winslow* v. *Boston & Maine Railroad*, 165 Mass. 264. *Ellis* v. *Boston & Maine Railroad*, 169 Mass. 600, 602. *Cole* v. *New York, New Haven, & Hartford Railroad*, 174 Mass. 537, 539.

*Exceptions sustained.*